UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :

WINIFRED JIAU,                                :

                         Plaintiff,            :

                                                    :               12 Civ. 7335 (PAE)

                  -v-                        :

                                                    :                    ORDER

JOANNA C. HENDON,                     :

                                                    :

                         Defendant.       :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

         Winifred Jiau was convicted by a jury of conspiracy to commit securities and wire fraud,

in violation of 18 U.S.C. § 371, and securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff,

15 C.F.R. 240.10b-5, and 18 U.S.C. § 2. *See United States v. Jiau*, No. 11 Crim. 161 (JSR)

(S.D.N.Y. Oct. 4, 2011) ("*U.S. v. Jiau*"), Dkt. 124, *aff'd* 734 F.3d 147 (2d Cir. 2013). Jiau, now

proceeding *pro se*, sues the attorney who represented her at trial and sentencing, Joanna Hendon,

for legal malpractice and related claims. Hendon moves to dismiss. For the reasons that follow,

that motion is granted.

## I.       Background[1]

         The gravamen of Jiau's complaint is that Hendon rendered inadequate legal services to

her in connection with her criminal trial and sentencing. Accordingly, the Court has reviewed in

---

[1] The facts below are drawn from the Second Amended Complaint ("SAC"), Dkt. 34, and the docket sheet in Jiau's criminal case, *U.S. v. Jiau*. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("docket sheets are public records of which the court could take judicial notice"); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of court document as a public record); *Joe v. Moe*, No. 10 Civ. 4417 (RJS), 2011 WL 2416882, at *1 n.3 (S.D.N.Y. June 1, 2011) (reciting facts "taken from the docket sheet of the federal prosecution referenced in the pleadings").

detail, and recounts here before addressing the parties' legal arguments, the relevant events in

Jiau's criminal case.

### A.      Jiau's Criminal Case and Allegations against Hendon

On March 4, 2011, Hendon was appointed as Jiau's counsel.  SAC ¶ 8.  On March 10,

2011, Jiau's case, originally assigned to Judge Patterson, was reassigned to Judge Rakoff.  *Id.*

¶ 10.  Jiau states that Hendon did not ask Jiau's consent for this change, that Judge Patterson had

been inclined to grant Jiau's bail application, and that the criminal cases of other defendants in

the related civil case of *Securities and Exchange Commission v. Longoria et al*, No. 11 Civ. 753

(JSR), were not similarly reassigned.  SAC ¶ 10.

#### 1. The Bail Application

On March 14, 2011, Jiau moved for release on bail.  *U.S. v. Jiau*, Dkt. 37.  The parties

made written submissions as to bail.  *Id.*  On March 16, 2011, the Court heard argument.  *Id.*  On

March 22, 2011, the Court conducted an evidentiary hearing, at which both Jiau and her

proposed suretor, Terry Peng, testified.  *Id.*  "At the conclusion of the evidentiary hearing, the

Court gave its tentative view that bail would likely be denied, but gave the parties the

opportunity to submit further written submissions before a final determination was made."  *Id.*

On or about March 23, 2011, Jiau and Hendon communicated about continuing to pursue

bail and, if Jiau's bail application were denied, appealing the denial.  SAC ¶ 11.  On March 28,

2011, Hendon moved to withdraw Jiau's bail application "without prejudice to her making a

further application should changed circumstances in particular – in particular, the availability of

additional or substitute suretors – warrant it."  *U.S. v. Jiau*, Dkt. 38.  On March 30, 2011, Judge

Rakoff issued an order regarding Jiau's bail eligibility.  He stated that "the Court deems it

unlikely that the mere availability of additional or substitute suretors would be sufficient to

change the Court's view that no combination of conditions would reasonably assure defendant's appearance if she were not detained." *Id.* Dkt. 37.

Jiau alleges that Hendon, in withdrawing Jiau's bail application, was "[c]onspiring with investigators," that Hendon "misled Jiau [in]to believing that a bail application would be resubmitted later," and that Hendon withdrew the bail application to hide from Jiau the fact that Hendon had lost Jiau's passport. SAC ¶¶ 11, 16. Jiau states that her pretrial detention caused her harm, in part because it prevented her from accessing the Internet, which, she states, would have allowed her to detect various misrepresentations by Hendon, including an allegedly false resume. *Id.* ¶ 11.

### 2. The Alleged Failure to Negotiate a Plea Agreement

Jiau alleges that Hendon repeatedly refused her requests, including in April 2011 and on May 12, 2011 and June 7, 2011, to negotiate a plea agreement. *Id.* ¶ 12. Jiau states that other insider trading defendants received favorable plea agreements but she did not. *Id.* ¶ 18.

### 3. The Suppression Hearing

On March 28, 2011, Hendon filed a motion to suppress the recordings of certain telephone conversations with tippees that she argued were inadmissible under Title III, 18 U.S.C. §§ 2510-22. *U.S. v. Jiau*, Dkt. 33–34. On April 27, 2011, the Court held a suppression hearing. *Id.* Dkt. 98. After the hearing, the Court denied the motion to suppress. *Id.* On May 12, 2011, after additional briefing and live testimony, the Court again, orally, denied the motion to suppress. *Id.* That day, Jiau alleges, she requested that Hendon negotiate a plea agreement, but Hendon refused. SAC ¶ 12.

On June 30, 2011, the Court issued a decision explaining its denial of the suppression motion. *U.S. v. Jiau*, Dkt. 98 (opinion also available at *United States v. Jiau*, 794 F. Supp. 2d

484, 485 (S.D.N.Y. 2011)).  The Second Circuit later affirmed that decision.  *United States v. Jiau*, 734 F.3d 147 (2d Cir. 2013).

Regarding the suppression hearing, Jiau makes the following claim, which is not easily synopsized, and which the Court therefore reproduces in full:  "Hendon further ignored Jiau's warning and objection without investigating the intercepted recordings provided by Pflaum. Otherwise, prosecutor's Brady Violation could be rectified by stopping Plaum to testify in suppression hearing.  Hendon further conspired with prosecutors in the suppression hearing to allow Government's witness testify falsely in a material way, misled District Court admit the intercepted tape recordings which were actually recorded by Haasch without Barai's consent." SAC ¶ 12.

### 4.  The Trial

On June 1, 2011, Jiau's trial began.  *U.S. v. Jiau* (text minute entry June 1, 2011).  On June 7, 2011, Jiau states, she asked Hendon to negotiate a plea agreement.  SAC ¶ 12.  Jiau alleges that Hendon refused to do so, *id.*, and "defiantly misadvised Jiau of a mistrial or a hung jury," *id.* ¶ 18.

On June 20, 2011, the jury found Jiau guilty, on both counts.  *U.S. v. Jiau* (text minute entry June 20, 2011).

On July 12, 2011, Hendon filed a motion for acquittal or, in the alternative, a new trial. *Id.* Dkt. 102.  After briefing, on August 17, 2011, the court denied the motion.  *Id.* Dkt. 117.

Jiau alleges that, both in preparing for and representing her during the trial, Hendon committed legal malpractice in a long list of ways, including failing to: investigate exculpatory evidence, call witnesses with material evidence, retain expert witnesses, impeach Government witnesses, object to jury instructions and to the Court's responses to jury questions, engage in

voir dire, object to "discharge of the sworn juror," move for a mistrial "for abuse of discretion," object to leading questions and to bolstering by prosecutors of a witness named Nguyen, move for a new trial on the ground of improperly admitted hearsay, adequately represent Jiau at sentencing, and make a jurisdictional challenge. SAC ¶ 13. Jiau also alleges that Hendon had a conflict of interest because she represented defendants in a different insider trading case, involving the Galleon hedge fund. *Id.* ¶¶ 14, 17, 19. Jiau also alleges that Hendon's online resume falsely stated that she had been Samuel Waksal's lead defense attorney in the ImClone insider trading case. *Id.* ¶ 23.

### 5. Sentencing

On September 12, 2011, the government submitted its sentencing memorandum. *U.S. v. Jiau*, Dkt. 120. On September 15, 2011, Hendon submitted Jiau's. *Id.* Dkt. 121. On September 15, 2011, the Court held a hearing on Jiau's application to substitute counsel, at the close of which Jiau withdrew her application. *Id.* (text minute entry Sept. 15, 2011). On September 21, 2011, the Court held a sentencing hearing. *Id.* (text minute entry Sept. 21, 2011). On October 4, 2011, the Court sentenced Jiau to two concurrent 48-month terms of imprisonment and a two-year term of supervised release, and ordered her to forfeit $3,118,000 and to pay a mandatory special assessment of $200. *Id.* Dkt. 124.

Jiau alleges that, "[i]n or around late summer or fall 2011, Hendon became hard to reach, neglecting her duty as a criminal defense counsel . . . including filing defendant's sentencing memo, and performing defense services for Jiau in a scheduled sentencing hearing on September 21, 2011." SAC ¶ 17. Jiau also alleges that Hendon "conspired with prosecutors" to increase Jiau's sentencing range "on the basis of avoided losses and profits over $3.2 million," and that

her resulting sentence was imposed in violation of *Aprendi v. New Jersey*, 530 U.S. 46 (2000), because the facts on which that range was calculated were not submitted to the jury.  SAC ¶ 18.

### 6.   Appeal and the Termination of Hendon's Representation of Jiau

On October 6, 2011, Hendon filed a notice of appeal.  *U.S. v. Jiau*, Dkt. 120.  On October 17, 2011, Hendon visited Jiau at the Metropolitan Correction Center in New York and told Jiau she would no longer represent her.  SAC ¶ 21.  Jiau states that she accepted this decision.  *Id.*  On October 19, 2011, Hendon moved to be relieved as Jiau's attorney.  *United States v. Jiau*, No. 11-4167 (2d Cir.), Dkt. 5.  On October 20, 2011, the Second Circuit granted that motion and appointed new CJA counsel for the purposes of appeal.  *Id.* Dkt. 9–10.

Before the district court, Jiau then filed numerous *pro se* motions, including (1) for a new trial on the grounds that Hendon and her law firm had conflicts of interest based on their representation of defendants in the Galleon investigation and that Hendon's online resume allegedly was false, *U.S. v. Jiau*, Dkt. 146, 148; (2) for release from custody pending her appeal, *id.* Dkt. 155, 157; and (3) to vacate her sentence, *id.* Dkt. 161.

On August 7, 2012, Judge Rakoff denied Jiau's motions for release pending appeal, admonishing Jiau that, "as Jiau has been admirably represented by counsel both at her trial and on appeal, she is advised that the Court will no longer accept her *pro se* submissions.  The Court directs Jiau to file all future papers through her attorney."  *Id.* Dkt. 159.  Jiau then made multiple requests to Hendon to withdraw as her attorney before the district court.  SAC ¶¶ 30–31.  On September 18, 2012, at Jiau's request, Hendon moved to withdraw as Jiau's attorney before that Court.  *U.S. v. Jiau*, Dkt. 165.  On October 1, 2012, the Court granted that motion.  *Id.* Dkt. 169.

On October 23, 2013, the Second Circuit affirmed Jiau's conviction.  *United States v. Jiau*, 734 F.3d 147 (2d Cir. 2013).  In a separate summary order, the Second Circuit rejected

Jiau's challenge to two jury instructions and affirmed her sentence, save that it vacated the order of forfeiture in light of the intervening decision in *United States v. Contorinis*, 692 F.3d 126 (2d Cir. 2012). *United States v. Jiau*, Nos. 11-4167, 12-2222, 2013 WL 5735278 (2d Cir. Oct. 23, 2013).

### B.       Procedural History of the Instant Action

On September 28, 2012, Jiau, proceeding *pro se*, brought this suit against Hendon and her then-law firm, Morgan, Lewis & Bockius LLP ("Morgan Lewis"). Dkt. 1. On February 4, 2013, Jiau filed a First Amended Complaint. Dkt. 22. On May 7, 2013, defendants moved to dismiss. Dkt. 27. In response, on July 15, 2013, Jiau filed the SAC, bringing causes of action for legal malpractice, negligence, breach of fiduciary duty, breach of implied contract, "violation of civil rights," and fraud. Dkt. 34.

On August 5, 2013, defendants moved to dismiss the SAC, arguing that the case should be dismissed for lack of subject matter jurisdiction, including because there was no complete diversity of citizenship between the parties. Dkt. 35. Defendants noted that, as a partnership, Morgan Lewis is a citizen of every state of which any of its partners is a citizen, *C. T. Carden v. Arkoma Associates*, 494 U.S. 185, 196–97 (1990), making it, like Jiau, a citizen of California. In response, on August 19, 2013, Jiau moved "to substitute John and Jane Does Number 1-400 who are partners located and doing business in Morgan Lewis & Bockius, LLP's offices in the State of New York or Pennsylvania as party-defendant, in place and instead of Morgan Lewis Bockius, LLP." Dkt. 43. On September 16, 2013, defendants responded. Dkt. 47. On September 20, 2013, the Court denied Jiau's motion to substitute as futile, because as defendants noted, Jiau had not pled any legally sufficient claims against the John and Jane Doe partners she sought to name as defendants.

On September 30, 2013, Jiau moved for reconsideration of that decision or, in the alternative, to substitute for the then-named defendants (Morgan Lewis and Hendon) the following persons: Hendon, David Luttinger, and, as Does, the as-yet unidentified other lawyers at Morgan Lewis who had worked on Jiau's criminal case.  Dkt. 51.  On October 18, 2013, defendants responded.  Dkt. 55–56.  On October 21, 2013, the Court granted Jiau's motion to drop Morgan Lewis but denied as futile Jiau's motion to add Luttinger or the Doe attorneys, because the SAC was "devoid of any reference to wrongdoing by Luttinger, save for the conclusory statement that he was 'aware [of] Hendon's malpractice,'" and did not "allege any acts of wrongdoing by the unidentified attorneys."  Dkt. 57 at 2–3.  This left Hendon as the sole remaining defendant.  *Id.* at 3.  The Court directed Hendon to file a new memorandum of law in support of her motion to dismiss or inform the Court and plaintiff that she would rest on her previously filed memorandum.  *Id.*

On October 22, 2013, the Court received Jiau's affirmation in opposition to the motion to dismiss, which she had signed and mailed before the Court's October 21, 2013 order.  Dkt. 58 ("Pl. Br.").  The next day, the Court reiterated, in the interest of clarity, that Hendon should file a new memorandum of law in support of her motion to dismiss or state that she would rest on her previously filed memorandum, and that Jiau could then elect to rest on the opposition filed at docket number 58, amend it, or file a new opposition.  Dkt. 60.

On November 4, 2013, Hendon filed a motion to dismiss, Dkt. 62, an accompanying memorandum of law, Dkt. 63 ("Def. Br."), and an affirmation in support, Dkt. 64.  On November 19, 2013, Jiau filed a Motion for Leave to File Supplemental Documents, Dkt. 66, which the Court stated it would treat as exhibits accompanying Jiau's opposition, Dkt. 67.  On January 6,

2014, Jiau supplemented her opposition.  Dkt. 68 ("Pl. Supp. Br.").  On January 22, 2014,

Hendon submitted a reply.  Dkt. 71 ("Def. Reply Br.").

## II.      Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly

dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Accordingly, a district court

must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences

in the plaintiff's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007).  However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  A

pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555.

In addition, a claim for common law fraud under New York law must satisfy the

requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b).

*See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d

Cir. 2004); *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 327 (S.D.N.Y. 2006).  Rule 9(b)

provides:  "In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's

mind may be alleged generally." Fed. R. Civ. P. 9(b).  The Second Circuit has clarified that

although intent may be alleged generally, "we must not mistake the relaxation of Rule 9(b)'s

specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations." *Lerner v. Fleet Bank*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted).  Rather, a plaintiff must allege facts that "give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Finally, district courts are "obligated to construe *pro se* complaint[s] liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), interpreting them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  Courts may not, however, read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations, *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (citation omitted), or arguments that the submissions themselves do not "suggest," *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir. 2006).  *Pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

## III.   Discussion

For the reasons that follow, the SAC fails to state a legally cognizable claim.  The motion to dismiss is, therefore, granted.

### A.     Legal Malpractice

"To raise a legal malpractice claim in New York, arising from a criminal proceeding, the 'plaintiff must allege his innocence or a colorable claim of innocence of the underlying offense, for so long as the determination of his guilt of that offense remains undisturbed, no cause of action will lie.'" *Klein v. Talkin, Muccigrosso & Roberts, L.L.P.*, 415 F. App'x 288, 289 (2d Cir. 2011) (quoting *Carmel v. Lunney,* 70 N.Y.2d 169, 173 (1987)).  "[I]n order to 'open the door for even a colorable claim of innocence, criminal defendants must free themselves of the conviction, for the conviction precludes those potential plaintiffs from asserting innocence in a civil suit.'"

*Sash v. Schwartz*, 356 F. App'x 555, 556 (2d Cir. 2009) (quoting *Britt v. Legal Aid Soc., Inc.*, 95 N.Y.2d 443, 447 (2000)).

The Second Circuit has affirmed Jiau's conviction.  *United States v. Jiau*, 734 F.3d 147 (2d Cir. 2013).  Accordingly, Jiau has failed to "free [herself] of the conviction," and thus her legal malpractice claim fails.

Moreover, that Jiau has alleged violations of New York's Rules of Professional Conduct does not, contrary to Jiau's claim, Pl. Supp. Br. 1–2, rescue her legal malpractice claim.  The ethical rules governing lawyers have their own means of enforcement; a violation of such a rule does not, without more, give a client or former client a malpractice claim.  *See Arkin Kaplan LLP v. Jones*, 840 N.Y.S.2d 48, 51 (1st Dep't 2007) ("[E]ven if a violation of the Code of Professional Responsibility had occurred, that, in itself, would not create a private right of action.") *Schafrann v. N.V. Famka, Inc.*, 787 N.Y.S.2d 315, 316 (1st Dep't 2005) ("A conflict of interest, even if a violation of the Code of Professional Responsibility, does not by itself support a legal malpractice cause of action."); *Mills v. Pappas*, 570 N.Y.S.2d 726, 728 (3rd Dep't 1991) ("[A]ny such conflict of interest is at most a violation of defendants' ethical responsibilities, an insufficient basis for imposing liability.").

### B.      Negligence, Breach of Fiduciary Duty, and Breach of Contract

"Under New York law, where a claim for breach of fiduciary duty is 'premised on the same facts and seeking the identical relief' as a claim for legal malpractice, the claim for fiduciary duty 'is redundant and should be dismissed.'"  *Nordwind v. Rowland*, 584 F.3d 420, 432–33 (2d Cir. 2009) (quoting *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (1st Dep't 2004)).  The same is true for other claims that duplicate legal malpractice claims.  *Dinhofer v. Med. Liab. Mut. Ins. Co.*, 938 N.Y.S.2d 525, 527

(1st Dep't 2012) *leave to appeal denied*, 19 N.Y.3d 812 (2012) (fraud); *InKine Pharm. Co., Inc. v. Coleman*, 759 N.Y.S.2d 62, 63 (1st Dep't 2003) (breach of contract); *Amadasu v. Ngati*, No. 05 Civ. 2585 (JFB)(LB), 2006 WL 842456, at *9 (E.D.N.Y. Mar. 27, 2006) (negligence).

The gravamen of Jiau's complaint is that Hendon failed to adequately represent her during the pretrial, trial, and sentencing phases of her criminal case. That accusation sounds in legal malpractice. Jiau cannot avoid her duty to adequately plead the elements of a legal malpractice claim by packaging her claim as a different cause of action, when that cause of action is "premised on the same facts and seeking the identical relief" as her malpractice claim. Because Jiau's claims for negligence, breach of fiduciary duty, and breach of contract are merely repackaged legal malpractice claims, they must be dismissed.

### C.      Fraud

Hendon argues that the fraud claim must also be dismissed as duplicative of the legal malpractice claim. Def. Br. 8–10. Jiau, however, argues that her fraud claim is distinct from her malpractice claim. Pl. Supp. Opp. 7.

As to this limited point, Jiau is correct, because the fraud claim is not "premised on the same facts" as the legal malpractice claim. Jiau's fraud claim is based on assertions that Hendon made two misrepresentations or sets of misrepresentations, to her: as to (1) her experience in insider trading cases, particularly the ImClone matter, and (2) the reasons for her decision not to use certain information related to Sonar Capital in Jiau's defense at trial and at sentencing. SAC ¶¶ 14, 17, 23, 61–64; *see also* Pl. Supp. Br. at 7–8. Jiau's claim of misrepresentations regarding her work on ImClone, at least, does not concern the substance of Hendon's legal representation of her at trial or sentencing, which is the subject of the malpractice claim. Instead, it consists of

a claim that Hendon inflated her credentials.  The fraud claim therefore does not fully duplicate the legal malpractice claim.

The fraud claim, however, fails for a different reason:  It does not allege facts that "give rise to a strong inference of fraudulent intent."  *Shields*, 25 F.3d at 1128.

The first allegation that the SAC recites in support of the fraud claim is that Hendon's online biography claimed "she was Mr. Samuel Waksal's lead defense attorney in the Im[C]lone securities fraud case," whereas the docket sheet does not reflect an appearance by Hendon.  SAC ¶¶ 23, 61; *see also* Pl. Supp. Br. at 7–8.  Hendon's online biography, as submitted by Jiau, does not, however, represent that Hendon was the "*lead* defense attorney" in that matter.  Instead, it states, that Hendon's "[r]epresentative criminal and regulatory matters" include the "defense of the former ImClone CEO."  SAC at A127 & A128.  Jiau's claim that Hendon falsely professed to have played the lead role in that matter is, thus, refuted by the material on which Jiau relies. Further, although the docket sheet does not reflect a notice of appearance, Hendon's name appears at least three times on the docket of that matter, consistent with her having played a role in Waksal's defense, as her online biography claimed.  *See United States v. Waksal*, No. 02 Crim. 1041 (WHP) (S.D.N.Y.) (cited by SAC ¶ 23).  Thus, on the basis of the documents that Jiau herself has submitted or referenced, Hendon's statement regarding her role in the Waksal case appears to have been entirely accurate.  It certainly does not bespeak fraud.  This allegation, therefore, does not, at all, support an inference of fraudulent intent.

The second set of allegations in the fraud claim is that Hendon misrepresented the reasons for her decision, at trial, not to use certain information related to Sonar Capital.  SAC ¶¶ 14, 17, 62–64; *see also* Pl. Supp. Br. at 7–8.  The SAC is unclear precisely what information Jiau is referring to, but Jiau appears to refer to an email from a Sonar official that tended to

suggest that the insider trading scheme was of a smaller scale than alleged, which, if credited, stood to reduce Jiau's exposure at sentencing.  *See United States v. Jiau*, No. 12-4221 (2d Cir.), Dkt. 32 at A159 (cited in SAC ¶ 14) (letter from Jiau to her counsel regarding draft Presentence Report, in which Jiau suggested that "perhaps the mail you have for Vik of Sonar that MRVL's sell-off is caused by broader market risk, hedge fund decided to down size. . . .  [T]hen, we can argue that MRVL was sold by Barai on 5/29 at $14.98 which is the price when earning was released on 5/23.  Jiau is not responsible to the amount beyond that since the info were already public any one can trade them freely.").  The SAC alleges that, in June 2011, Hendon told Jiau that she had not used this information at trial "because of the trial strategy.  We had entered a [j]oint-defense agreement with Sonar."  SAC ¶ 63.  The SAC alleges that, some three months later, in September 2011, in connection with sentencing, Hendon explained the decision not to use the Sonar information, to wit, that it was "because of the defense strategy.  There is no agreement with Sonar."  *Id.* ¶ 64.  The SAC alleges that these reasons did not reflect Hendon's true reasons for not using the email from Sonar Capital.  But the SAC does not coherently explain what Hendon's true reasons were.  And it does not supply any basis—much less the strong basis required—for inferring that Hendon, in some way, acted with fraudulent intent in explaining to Jiau her reasons for not offering this email.

In sum, the SAC simply does not allege any facts on which a trier of fact could infer, other than on the basis of speculation, that Hendon acted with fraudulent intent in making the alleged representations to Jiau.  The SAC therefore fails to state a claim for fraud.

### C.      Violation of Civil Rights

The SAC also alleges that Hendon violated Jiau's civil rights under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006(A)(e)(1), and the Fourth and Fourteenth Amendments.  The CJA,

however, does not provide for a private right of action by clients or former clients against their CJA attorneys, and Jiau does not identify authority supporting such a right of action or reasons to rebut, in this context, the presumption against an implied right of action. *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) (in absence of an explicit private right of action, "we begin with the presumption that Congress did not intend one"). As for what the Court takes to be Jiau's apparent claim under 42 U.S.C. § 1983, the law is clear that an attorney appointed pursuant to the CJA who performs "a lawyer's traditional functions as counsel to a defendant in a criminal proceeding" is not a state actor. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"). And the SAC does not plead that Hendon performed anything other than a lawyer's traditional function in representing a criminal defendant. Jiau's claim for violations of civil rights must be dismissed.

### D.     Jiau's Request to Reinstate Morgan Lewis as a Defendant

In her supplemental opposition, Pl. Supp. Br. 2–3, and in a subsequent motion, Dkt. 73, Jiau asks the Court to reinstate Morgan Lewis as a defendant. The Court denies that request, for several reasons. First, Jiau previously asked the Court to drop Morgan Lewis as a defendant, Dkt. 51; she offers no justification for allowing her to reverse that decision at this late stage. Second, adding Morgan Lewis would destroy diversity jurisdiction; unless the Court were to exercise supplemental jurisdiction, this would create needless inefficiencies. Third, and most important, the reasons identified herein for dismissing Jiau's claims against Hendon apply with

equal force to the SAC's nearly identical claims against Morgan Lewis.  Reinstating Morgan Lewis as a defendant would be futile.

## CONCLUSION

For the foregoing reasons, the SAC is dismissed.  This moots Jiau's recent motions for exemption from payment of fees for electronic access to the docket, Dkt. 74, and for permission to participate in electronic case filing, Dkt. 75.  The Clerk of Court is directed to terminate the motions pending at docket numbers 35, 62, 66, 68, 73, 74, and 75, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: February 12, 2014
       New York, New York